PASSION WADE,

                Plaintiff,

v.                                                 Case No. 19-cv-1234-pp

KENOSHA COUNTY, *et al.*,

                Defendants.

## \*\*AMENDED\*\* ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A

Passion Wade, who is confined at the Racine Youthful Offender Correctional Facility and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fe (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

1

On August 27, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $12.92. Dkt. No. 5. The court received a payment of $13.00 on September 12, 2019. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.     Screening the Complaint**

    A.     Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

2

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff has sued Kenosha County, Kenosha County Sheriff David Beth, J. Anthony and Captain Bill Beth. Dkt. No. 1 at 2. Defendants Anthony and Bill Beth worked at the Kenosha County Detention Center (KCDC) where the plaintiff previously was incarcerated and where some of the events alleged in the complaint occurred. Id. The plaintiff sues the defendants in their "individual and legal capacity," which the court construes as their individual and official capacities. Id.

The plaintiff alleges that he was booked into the Kenosha County Jail on July 17, 2018. Id. at 3. He says that he was "subjected to unsanitary and

3

unsafe conditions of confinement," including receiving used underwear with other detainee's pubic hairs, bodily fluids and feces stains and showers that had "mold and a foul odor coming from the drain with bugs." Id. The plaintiff alleges that over the time he was in jail, he filed grievances that went unanswered. Id. The plaintiff alleges that once he was transferred to KCDC, he continued to "receive used underwear with other detainee's pubic hairs knitted in the crouch area with bodily fluids." Id.

The plaintiff also alleges that on May 28, 2019, he was sent to segregation at KCDC for allegedly being verbally disrespectful to an employee. Id. at 4. He says that while he was in segregation, defendant Anthony put the plaintiff in a restraint belt and took him to the shower. Id. at 4. The plaintiff alleges that this is common practice at KCDC. Id. The plaintiff says that while he was in the shower and restrained by the belt, he slipped and fell, hitting his head and back. Id. He alleges that because he was wearing the restraint belt, he was unable to catch himself, subjecting him to an unsafe condition where he injured himself, causing "excruciating" pain to his back and head. Id. The plaintiff says that he was the only one out of his cell at the time, and that he laid in the unsanitary shower on his stomach for fifteen minutes before someone transported him to the emergency room. Id. He says the restraint belt had to be cut off, after which he was diagnosed with "a back injury" and given pain medication. Id. The plaintiff was taken back to the Kenosha County Jail, where he filed his first grievance about the incident. Id.

4

The plaintiff alleges that through June and July 2019, KCDC medical staff saw him and continued to prescribe him pain medication, exercises and stretching for his back. Id. at 5. He continued to suffer pain and filed another grievance on August 1, 2019. Id. He says that on August 4, 2019, the grievance "was heard and dismissed, alleging that 'policy is in place that requires all of the inmate population that are housed in H-west segregation be restrained for their safety and the safety of staff while housed in segregation.'" Id. The dismissal also indicated that a review of the plaintiff's outdoor recreational activities indicated that he was doing things that implied he had little to no discomfort from the severe back injury that he alleged; the plaintiff says, however, that exercise was recommended by the nurse. Id. He appealed on August 5. Id.

The plaintiff alleges that he continued to experience back pain. Id. at 6. On August 10, 2019, HCDC medical staff increased his pain medication. Id. He appealed the dismissal of his grievance, and another unnamed grievance officer referred to a restraint policy for inmates during recreation but also forwarded the appeal to a committee for review. Id. The plaintiff contests the officer's reference to this policy because it does not address use of the restraint belt while inmates are showering. Id. The plaintiff asserts that he may end up suffering from future health problems. Id.

The plaintiff seeks monetary damages of $250,000 and in injunction ordering the defendants to stop restraining inmates during showers. Id. at 7.

5

C. Analysis

The court infers that the plaintiff is trying to sue the defendants in their official capacities. When a plaintiff makes a claim against a state actor in his official capacity, he really is suing against the entity that the state actor represents or for which the state actor works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The court construes the plaintiff's claims against the defendants in their official capacities as claims against the Kenosha County Jail and KCDC. Graham, 473 U.S. at 165–66. Because neither the jail nor KCDC are "persons" subject to suit under §1983, the court construes the plaintiff's official-capacity claims as claims against Kenosha County. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles Cty., Cal. v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting

Daniel v. Cook Cty., 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff alleges that Kenosha County has a policy of forcing inmates in segregation to wear restraint belts when they shower. He alleges that it is because of this policy that he was injured when he slipped and fell in the shower. Because the plaintiff alleges that the shower-restraint policy is caused his injury, it is appropriate for the plaintiff to name Kenosha County as a defendant. The question is whether that policy violated the plaintiff's constitutional rights.

The plaintiff does not explain whether he was a pretrial detainee or a convicted prisoner at the time of his fall in the shower. If he was a pretrial detainee, his conditions-of-confinement claim arises under the Fourteenth Amendment's Due Process Clause; if he was a convicted prisoner, it arises under the Eighth Amendment's Cruel and Unusual Punishments Clause. See Hardeman v. Curran, 933 F.3d 816, 822-823 (7th Cir. 2019) (explaining that an objective reasonableness standard applies to claims brought by pretrial detainees while a deliberate indifference standard applies to claims brought by convicted prisoners). Under the Fourteenth Amendment, a pretrial detainee needs to show only that the policy is not rationally related to a legitimate non-

7

punitive government purpose or that it is excessive in relation to that purpose. Id. (citing Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015)). Under the Eighth Amendment, a convicted prisoner must show that Kenosha County was deliberately indifferent to his conditions of confinement; he must allege that the risk the policy posed to him was objectively serious and that the County was deliberately indifferent to that risk (that it knew of and disregarded the risk to the plaintiff's safety). See Knight v. Grossman, 942 F.3d 336, 340 (7th Cir. 2019) (citations omitted). The court need not determine whether the plaintiff was a pretrial detainee or a convicted prisoner, however, because the Eighth Amendment standard is the more stringent one. The court will analyze his claims under that standard first.

As the court has noted, an Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

Prison slip-and-fall accidents rarely, if ever, implicate constitutional liability. See Pyles v. Fahim, 771 F.3d 403, 410 & n.25 (7th Cir. 2014) (citing

cases). The plaintiff, however, does not allege any old slip-and-fall; he alleges that what caused him to be more severely injured was the prison's policy of requiring inmates in segregation to wear a restraint belt while in the shower.

Another judge in this district has considered allegations that KCDC's policy of fitting segregation inmates with a "treatment belt" while showering violated the Eighth Amendment. Bonner v. Beth, No. 05-C-1076, 2007 WL 2220207, at *10 (E.D. Wis. July 31, 2007). Magistrate Judge William E. Callahan, Jr. assumed for the purposes of summary judgment, but did not conclude, that being forced to wear the belt while showering satisfied the objective component of an Eighth Amendment claim. Id. He also concluded that KCDC had valid objectives of maintaining prison security and managing the facility that justified using the restraint belts on inmates in segregation. Id. at 11. Judge Callahan granted summary judgment in favor of the defendants because the plaintiff had not shown that any defendant was deliberately indifferent to his risk of falling in the shower because of the restraint-belt policy. Id. at 12.

The plaintiff alleges that enforcement of the restraint-belt policy created a condition posing a substantial risk of serious injury to him and that he suffered serious injury because of the policy. He alleges that the defendants "knew or should have known" that enforcing this policy would create that risk, yet they continued to enforce it. The plaintiff filed grievances about the shower-restraint-belt policy, and a grievance officer responded that the policy was in place for the safety of segregation inmates and KCDC staff. But the grievance

9

officer's response refers to the general use of restraint belts on inmates in segregation. It says nothing about the specific use of the restraint belts on inmates while they shower. The defendants may be able to state valid penological justifications for using restraint belts on segregation inmates while they shower, but at the screening stage, the plaintiff has stated a claim that Kenosha County enforced the policy that was the "moving force" behind his injury. The court will allow the plaintiff to proceed against Kenosha County on his Eighth Amendment claim of deliberate indifference to his conditions of confinement.

The plaintiff also sues the defendants in their individual capacities. A prison official may be held liable under §1983 only if the official caused or participated in a constitutional violation. See Hildebrandt v. Ill. Dept. of Natural Res., 347 F.3d 1014, 1039 (7th Cir. 2003). The plaintiff does not allege that either Sheriff Beth or Captain Beth were involved in putting him in the restraint belt for showering or in leaving him in the shower after he fell. The court will not allow the plaintiff to proceed against Sheriff Beth or Captain Beth on the shower restraint claim.

The only defendant whom the plaintiff alleges was directly involved in his slip-and-fall accident was Anthony, who put the plaintiff in the restraint belt and escorted him to the shower. But it appears that Anthony was following KCDC policy in doing so, and that is not a basis for holding him constitutionally liable. See Bonner, 2007 WL 2220207, at *11 ("[T]he fact that defendant . . . followed KCDC policy by requiring the plaintiff to shower in the

10

treatment belt is not, by itself, unconstitutional."). The plaintiff does not allege that Anthony was aware of a danger specific to the plaintiff from wearing the restraint belt while showering. Nor does he allege that Anthony did anything else to violate his constitutional rights. The plaintiff has not stated a claim against Anthony in his individual capacity.

The plaintiff also alleges that while at the Kenosha County Jail and at KCDC, he sometimes received underwear that was stained and contained public hair. He also alleges that the jail's showers had a foul odor and mold and bugs in them. The plaintiff has not identified who gave him the underwear or who was responsible for the condition of the showers at the jail, nor has he alleged that Kenosha County had a custom or policy of providing inmates stained underwear and dirty showers. The plaintiff has not alleged that he suffered any ill-effects from wearing the underwear or using the showers. While these conditions may have been unpleasant, they do not rise to the level of an Eighth Amendment violation. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting that "extreme deprivations are required to make out a conditions-of-confinement claim"); Wilson v. Seiter, 501 U.S. 294, 298 (1991) (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 349 (1981) (reiterating that the Constitution "'does not mandate comfortable prisons,'" and therefore only "deprivations denying 'the minimal civilized measure of life's necessities'" will sustain a claim of an Eighth Amendment violation)).

To the extent the plaintiff seeks to sue the unnamed inmate complaint examiners who either did not respond to his grievances, denied them or

11

reviewed his appeals, he does not state a claim. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [an inmate's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted).

The plaintiff now is incarcerated at the Racine Youthful Offender Correctional Facility. Because he is no longer at KCDC, and he has not alleged "a realistic possibility that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains," his request for an injunction prohibiting the defendants from putting inmates in restraints while showering is moot. Maddox v. Love, 655 F.3d 709, 716 (7th Cir. 2011); Ortiz v. Downey, 561 F.3d 664, 668 (7th Cir. 2009). Although the court is allowing the lawsuit to proceed, only the plaintiff's claims for money damages remain viable.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** David Beth, J. Anthony and Bill Beth as defendants.

**\*\*The court ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendant Kenosha County under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for

12

making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.**

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$337** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial proceedings.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin, this 20th day of October, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**